UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEXANDER GOULD, et al., | CASE NO. 2:22-cv-00820-LK |
| Plaintiffs, | ORDER REGARDING PENDING MOTIONS |
| v. | |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE CO., | |
| Defendant. | |

This matter comes before the Court on four motions: (1) Plaintiffs Alexander and Lieba Gould's Motion to Compel Defendant's Fed. R. Civ. P. 30(b)(6) Deposition, Discovery Answers, and Request for Attorney Fees and Costs, Dkt. No. 14; (2) Defendant Allstate Vehicle and Property Insurance Company's Motion to Exclude Evidence Regarding Damages, Dkt. No. 18; (3) Plaintiffs' Second Motion to Compel and Request for Fees, Costs, and Sanctions, Dkt. No. 29; and (4) Allstate's Motion to Stay Plaintiffs' Discovery and for a Protective Order, Dkt. No. 33. For the reasons set forth below, the Court denies Allstate's motions, grants in part and denies in part the Goulds' first motion to compel, and grants their second motion to compel.

# I.  BACKGROUND

This matter arises out of an insurance dispute between the Goulds and Allstate. While the Goulds were out of town in January 2022, a severe storm occurred and they were notified that water was coming through the ceiling in their kitchen. Dkt. No. 12 at 2–3; Dkt. No. 25-1 at 7. When they returned home, they found "water all over the floor, the counters, and the cabinets. The ceiling had fallen through in several places, and on the walls . . . the paint had peeled off." Dkt. No. 25-1 at 8. They allege that the resulting water intrusion caused major damage to their electrical system, their entire kitchen "had to be torn out," "[d]ust and possibly mold was spread throughout the house," and they had to move in with family when their house became uninhabitable. Dkt. No. 12 at 3; Dkt. No. 25-1 at 6.

The Goulds filed suit in June 2022, alleging that Allstate "failed to pay sufficient benefits to restore the home to its pre-loss condition, including a failure to agree to pay . . . sufficient benefits for replacement of components of the electrical system" and additional living expenses ("ALE") to allow them to live elsewhere while their home was restored to its pre-loss condition. Dkt. No. 12 at 3, 6. They claim that Allstate "failed to perform a full and fair investigation of the claim," denied the benefits to which they were entitled under the policy, and constructively denied their claim. *Id.* At 8. They bring claims for declaratory judgment, breach of the insurance contract, negligent claims handling, and violations of Washington's Consumer Protection Act ("CPA"), the duty of good faith, and Washington's Insurance Fair Conduct Act ("IFCA"). *Id.* at 8–11.

Allstate counters that it promptly acknowledged coverage, paid the mitigation expense, and paid the amount it believed was owed for the damage. Dkt. No. 18 at 1–2. In all, Allstate agreed to pay the Goulds $42,865.57 to repair their kitchen. Dkt. No. 34-1 at 1. But the Goulds were dissatisfied with that amount. Before they filed suit, they informed Allstate that their contractor could not restore the kitchen for less than $49,000. Dkt. No. 24 at 4; Dkt. No. 25-3 at 15. They

now contend that Allstate is liable for $15,531.94 in kitchen repair expenses. Dkt. No. 24 at 3. The Goulds also claim that the difference between the "electrical work order" they received and what Allstate paid to repair their electrical system was $10,381.95. *Id.*; Dkt. No. 25-3 at 15. They seek those allegedly unpaid amounts in damages, as well as unpaid ALE benefits, the costs of investigation, general damages, enhanced damages under the CPA and IFCA, and attorney's fees and costs. *See* Dkt. No. 19-4 at 4–5.

**A.**     **The Goulds' First Motion to Compel**

The Goulds served requests for production and interrogatories on Allstate on August 11, 2022. Dkt. No. 15 at 1. Although Allstate provided some information in response, the Goulds concluded that its written answers and document production were incomplete. *Id.*

On January 4, 2023, the Goulds propounded a Federal Rule of Civil Procedure 30(b)(6) deposition notice to Allstate. *Id.* at 2. The notice listed topics of inquiry and directed Allstate to produce documents related to those topics, many of which overlapped with their August 2022 written discovery requests. *Id.*; *see also* Dkt. No. 15-3 at 2–6.

The Goulds' counsel called Allstate's counsel on January 9, 2023 to schedule the Rule 30(b)(6) deposition and discuss the topics listed in the notice. Dkt. No. 15 at 2. During that call, Allstate's counsel was unable to provide available dates for the deposition and objected to most of the topics listed in the deposition notice. *Id.* The Goulds' counsel sent a letter on January 9, 2023 summarizing the call and detailing the deficiencies in Allstate's discovery responses. *Id.*; Dkt. No. 15-2 at 2–4.

Counsel conferred again on January 11, 2023. Dkt. No. 15 at 2. This time, Allstate's counsel indicated that "Allstate would not designate a witness at all for the Rule 30(b)(6) deposition or provide any additional discovery because Allstate intended to file a dispositive motion." *Id.* Allstate refused to discuss "any specific objections to the Rule 30(b)(6) topics or any

of plaintiffs' other discovery concerns, taking the position that it was not required to participate in discovery until after the Court ruled on its dispositive motion—which ha[d] yet to be filed." *Id.* Allstate does not dispute the Goulds' summary of those calls. On January 17, 2023, the Goulds filed a motion to compel Allstate "to designate a witness to testify to the topics included in plaintiffs' Fed. R. Civ. P. 30(b)(6) deposition notice and provide complete written discovery answers." Dkt. No. 14 at 2.

**B.     Allstate's Motion to Exclude Damages**

On January 30, 2023, Allstate filed a motion to exclude evidence of the Goulds' damages because their initial disclosures were untimely and incomplete. Dkt. No. 18 at 1. The Goulds acknowledge that all of their home repairs were completed by August 2022. Dkt. No. 24 at 3. Nevertheless, their August 17, 2022 initial disclosures did not include a computation of damages; instead, they listed categories of damages and stated that "plaintiffs will likely rely on expert testimony to establish damages." Dkt. No. 19-3 at 4. Allstate complained about the incomplete initial disclosures on September 1, 2022 and requested a discovery conference. Dkt. No. 19-5 at 2. The record does not show whether the parties held any discovery conferences between that email and their January 2023 conferences.

In the meantime, Allstate deposed both Plaintiffs on October 27, 2022 and questioned them about their alleged damages. Dkt. Nos. 25-1, 25-2. Mr. Gould testified that the Goulds are seeking damages for Allstate's "[f]ailure to pay a full amount for damages to our property, as well as failure to provide additional living expenses." Dkt. No. 25-1 at 3. He alleged that Allstate should have paid "[r]oughly $49,000 for the loss of the structure[.]" *Id.* He testified that the Goulds incurred additional living expenses as a result of the loss but had not submitted receipts, invoices, or claims to Allstate regarding those expenses and instead planned "to rely on an expert for that." *Id.* at 4.

Mrs. Gould stated during her deposition that Plaintiffs did not know "the exact number to

the cent" of their damages, but that "it's around $30,000 that we're asking for that still we need for the loss." Dkt. No. 25-2 at 3. She explained that it cost $49,000 to restore the kitchen to its pre-loss condition, and Allstate had not paid around $20,000 of that amount. *Id.* at 4.[1] She testified that it cost an additional $26,000 to repair the damaged electrical system, and Allstate had not paid $10,000 or $15,000 of that amount, though she "could be off" in those calculations. *Id* at 4.

On January 18, 2023, the Goulds provided supplemental initial disclosures. Dkt. No. 19-4. They again stated that they would "likely rely on expert testimony to establish damages," sought the reasonable value of the cost of "comparable home/alternative living expense benefits," and listed three categories of unpaid repair costs: (1) "[e]stimated unpaid electrical work: $10,381.95," (2) "[e]stimated unpaid kitchen repairs: $15,531.94," and (3) [i]ncreased utility bills: this amount is being calculated and will be supplemented." *Id.* at 4–5. Allstate contends that the supplement is still incomplete. Dkt. No. 18 at 2.

## C. The Goulds' Second Motion to Compel

The Goulds served deposition notices on January 24, 2023 for the depositions of Allstate claims adjusters Marcus Satterlee, Edward Toth, and Daniel Anderson to occur the week of February 21, 2023. Dkt. No. 31-2 at 2–11. On February 20, 2023, one day before the first deposition was scheduled to occur, Allstate sent an email stating that it would seek a protective order and that its witnesses would not attend the depositions because the Goulds "did not contact [Allstate's counsel] for scheduling prior to unilaterally sending the notices." Dkt. No. 31-1 at 2. Allstate also cited to its pending motion to exclude damages, which it believed might "make the issue of further discovery moot." *Id.* On February 21, 2023, the Goulds filed a second motion to

---

[1] The Goulds had some additional work performed at the same time as the storm-related repairs, so their contract with their general contractor J&C was for $114,000, and they assert that $49,000 of this amount was for storm-related repairs. Dkt. No. 25-2 at 9.

ORDER REGARDING PENDING MOTIONS - 5

compel, this time seeking an order compelling Allstate "to produce its claim adjuster fact witnesses for their depositions." Dkt. No. 29 at 2.

**D.    Allstate's Motion for a Stay of Discovery and Protective Order**

On February 23, 2023, Allstate filed a Motion to Stay Plaintiffs' Discovery and for a Protective Order. Dkt. No. 33. Allstate claims it paid all amounts owed and is therefore "at a loss as to why this lawsuit was filed or what the claim of the damages is based upon." *Id.* at 1. Allstate seeks to protect itself from further discovery from the Plaintiffs "until this court rules on Allstate's motion to exclude evidence and Allstate's soon to be filed motion for summary judgment." *Id.* at 2.

## II.    DISCUSSION

The Court first addresses the threshold issue of jurisdiction. It then addresses Allstate's motion to exclude evidence of the Goulds' damages because it is dispositive. The Court next considers Allstate's motion for a protective order and to stay discovery, then addresses the Goulds' two motions to compel and their related requests for attorney's fees, and the parties' requests for sanctions.

**A.    Jurisdiction**

The Goulds' complaint asserts that the court has jurisdiction under 28 U.S.C. § 1332, but it fails to adequately allege diversity. *See* Dkt. No. 12 at 1–2. Although the Goulds allege that they are citizens of Washington State and identify Allstate's principal place of business as Illinois, they say nothing about Allstate's state of incorporation. Dkt. No. 12 at 1–2. This information is necessary because for diversity purposes, a corporation is a citizen of "(1) the state where its principal place of business is located, and (2) the state in which it is incorporated." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

In accordance with its duty to independently determine whether subject matter jurisdiction

exists, the Court issued an Order to Show Cause requiring the Goulds to fully identify the citizenship of Allstate. Dkt. No. 48. The Goulds responded with evidence that Allstate's state of incorporation is Illinois. *See* Dkt. Nos. 49–50. The Court is satisfied that diversity exists.

The Goulds also allege that "the amount in controversy exceeds $75,000." Dkt. No. 12 at 2. "In a diversity case originally filed in federal court, the sum claimed in the complaint controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal." *Maine Cmty. Health Options v. Albertsons Companies, Inc.*, 993 F.3d 720, 723 (9th Cir. 2021) (emphasis in original) (cleaned up). It is unclear at this juncture whether the Goulds had a good faith belief that more than $75,000 was indeed at stake at the time they filed the complaint. However, it does not appear to a legal certainty that their claim is really for less than the jurisdictional amount.

**B.    The Court Declines to Exclude Evidence of the Goulds' Damages But Cautions That the Goulds Are on Thin Ice**

Allstate seeks an order excluding evidence of the Goulds' damages based on their alleged failure to timely and completely disclose their damages-related evidence and calculations. Dkt. No. 18 at 1. Allstate argues that the Goulds should have, but did not, disclose a damages calculation with their initial disclosures, and their supplemental initial disclosures are still insufficient. *Id.* at 2–3; *see also* Dkt. No. 33 at 6. Allstate contends that because the Goulds failed to make the required disclosures under Rule 26(a), they are "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Dkt. No. 18 at 5 (internal quotations omitted) (quoting Fed. R. Civ. P. 37(c)(1)); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The Goulds counter that the Court should deny the motion because Allstate failed to meet and confer before filing it, and because Allstate has "always" had information about their damages in its own

1    claims file, augmented by information it has obtained through discovery. Dkt. No. 24 at 1–2.

2          The Court agrees that Allstate did not meet and confer as required before filing its motion.

3    Allstate characterizes its motion as a motion in limine, Dkt. No. 18 at 7, and any motion in limine

4    "must include a certification that the movant has in good faith conferred or attempted to confer

5    with other affected parties in an effort to resolve which matters really are in dispute," LCR 7(d)(4).

6    In addition, the Goulds characterize the motion as dispositive, Dkt. No. 24 at 1, and note that

7    Allstate characterized it that way too, *id.* at 9. Dispositive motions also require a meet and confer.

8    Dkt. No. 17 at 6 ("Parties must make a meaningful effort to confer prior to filing a dispositive

9    motion. Such motions must contain a certification of conferral."); *see also* Dkt. No. 4 at 4 (same).

10   Allstate does not dispute its obligation to meet and confer and claims it did so, but cites only its

11   September 1, 2022 email requesting to meet and confer and asking when the Goulds' counsel was

12   available to do so. Dkt. No. 26 at 1–2; Dkt. No. 19-5 at 1. An email is insufficient. *See* LCR 1(c)(6)

13   (a meet and confer requires an in-person meeting or a telephone call). Allstate also vaguely

14   contends that "the issue of damages was discussed during virtually every conversation regarding

15   this case as set forth in the Wathen declaration." Dkt. No. 26 at 2. The Wathen declarations do not

16   include any such statement. *See generally* Dkt. Nos. 19, 27.

17         Nor was the parties' January 13, 2023 call a sufficient meet and confer for this motion.

18   When the parties conferred on that day about the Rule 30(b)(6) deposition, Allstate's counsel

19   "refused to discuss discovery or any of the deposition topics which the parties agreed to discuss

20   because Allstate intended to file a dispositive motion regarding damages," and the Goulds' counsel

21   responded that they would supplement their initial disclosures with more damages information.

22   Dkt. No. 25 at 2. Allstate does not claim to have followed up after it received the Goulds'

23   supplemental initial disclosures on January 18, 2023. Dkt. No. 19-4 at 7; Dkt. No. 25 at 2–3.

24   Instead, it filed its motion to exclude less than two weeks later, Dkt. No. 18, without first discussing

1  any deficiency in the supplement or fulfilling its meet and confer obligation. *See, e.g.*, *Brantigan*

2  *v. Depuy Spine, Inc.*, No. C08-0177-RSL, 2008 WL 4279405, at *1 (W.D. Wash. Sept. 12, 2008)

3  (holding that the meet and confer requirement was not satisfied when defendant filed a motion to

4  compel without conferring about supplemental responses because the parties "must meet and

5  confer to an impasse after all documents and supplemental responses have been exchanged.").

6  Therefore, Allstate's motion is denied based on the failure to meet and confer. *See Johnson v.*

7  *Columbia Debt Recovery, LLC*, No. C20-573RSM, 2021 WL 1964225, at *1 (W.D. Wash. May

8  17, 2021) (denying motion to exclude evidence of damages for failure to meet and confer as

9  required under Local Civil Rule 7(d)(4)).[2]

10        Nevertheless, the Goulds should not construe the Court's ruling as a determination that

11  they are not required to further supplement their initial disclosures. Rule 26 requires them to

12  provide "a computation of each category of damages claimed," Fed. R. Civ. P. 26(a)(1)(A)(iii)—

13  with documents they "may use to support [their] claims or defenses, *id.* 26(a)(1)(A)(ii). As Allstate

14  pointed out, the Goulds' initial disclosures were woefully inadequate. Dkt. No. 19-3 (purporting

15  to provide a "computation" but instead stating only that "plaintiffs will likely rely on expert

16  testimony to establish damages"). And they provide no explanation for why they did not

17  supplement their disclosures for months after Allstate pointed out the deficiencies. *See* Dkt. No.

18  19-5 at 1–2 (September 1, 2022 email stating that "[w]e will go back and try to supplement the

19  damages computation"); Dkt. No. 19-4 (January 18, 2023 supplemental initial disclosures). Even

20  then, the Goulds' supplemental disclosures failed to include any computation of the ALE damages

21  they claim to have incurred or supporting documents. *See* Dkt. No. 19-4 at 4; Dkt. No. 27-2 at 3,

22

23

24  [2] The Court also notes that Allstate failed to include word count certifications in four of its briefs. Dkt. Nos. 26, 33, 38, 39. Future noncompliant briefs may be summarily stricken.

8.[3] The supplemental disclosures also list allegedly unpaid amounts for kitchen repairs and electrical work as "estimated," and fail to specify amounts for "[i]ncreased utility bills." Dkt. No. 19-4 at 4. The Goulds acknowledge that the repairs were completed in August 2022, Dkt. No. 24 at 3, and they do not explain why, many months later, those damages remain "estimated." Nor do they explain why they cannot ascertain the amount their utility bills increased during repairs. Although some costs, like their alleged investigative expenses, may be ongoing, *id.* at 6, the Goulds do not claim that any repairs are ongoing. The most concise explanation of their alleged damages in the record appears in their response to this motion. *Id.* at 4. Although that explanation cites an invoice for electrical work, they also cite *estimates* and a contract for the entire cost of their remodel to support their damages for the kitchen repairs. *Id.* (citing Dkt. No. 25-3 at 4–12, 14–20); *see also id.* at 7 (citing Dkt. No. 25-4 at 2–5, 9–14, 16–18).[4] Allstate claims that information is insufficient. Dkt. No. 26 at 4; Dkt. No. 38 at 3 (arguing that the wire transfers Plaintiffs cite relate to their entire remodel).

The Court agrees. It is unacceptable that the Goulds have been unable to provide any calculations regarding increased utility costs this late in the game. And because the repair work has been completed and the Goulds allege that they incurred unpaid repair costs, they should be able to provide calculations and documentary support for the allegedly unpaid work and any ALE actually incurred and claimed as damages.

Frankly stated, it is time to fish or cut bait. If the Goulds lack evidence regarding certain

---

[3] The Goulds contend that Allstate refused to provide them with temporary housing, so they did not incur housing expenses and will rely on expert testimony to establish the amount they should have—but did not—receive. Dkt. No. 24 at 5; Dkt. No. 19-1 at 4. But they claim to have actually incurred other ALE expenses, despite never submitting any receipts, invoices, or claims to Allstate regarding such expenses. Dkt. No. 27-2 at 3, 8.

[4] The Goulds' depositions do not provide clarity either. Dkt. No. 25-1 at 3 (alleging that Allstate should have paid "[r]oughly $49,000 for the loss of the structure"); Dkt. No. 25-2 at 4 (providing approximate numbers that "could be off.").

damages or are otherwise precluded from pursuing certain claims, they should not waste Allstate's time or the Court's by further hiding the ball. It is not enough to point fingers at Allstate because it has "received damages information from several sources," Dkt. No. 35 at 4; a plaintiff's failure to provide a computation of damages is not "excused by the fact it made available records from which [the defendant] could have made a guess at the scope of damages," *Reed Constr., Inc. v. James River Ins. Co.*, No. C11-960-MJP, 2012 WL 13024803, at *2 (W.D. Wash. Apr. 6, 2012). *See also id.* ("The defendant is not required to simply guess at the value of the claim or to analyze thousands of documents to reach its own calculation."). And if the Goulds cannot timely produce straightforward calculations of the damages they claim to have incurred from increased utility costs, unpaid repair expenses, and ALE expenditures, a future motion to exclude those damages might be more successful.

**C.      For the Same Reasons, a Protective Order and Stay of Discovery Are Not Warranted**

After the Goulds filed their motions to compel, Allstate filed a motion for a protective order and to stay discovery until after the Court rules on its pending motion to exclude evidence of the Goulds' damages and "Allstate's soon to be filed motion for summary judgment." Dkt. No. 33 at 2. Allstate argues that in light of the Goulds' failure to disclose their damages calculations or identify documents to support a claim for damages, "the needs of this case do not warrant further discovery from the plaintiff[s]." *Id.* The Goulds oppose Allstate's motion because Allstate did not meet and confer, file a timely motion, show good cause to stay discovery, or identify the specific discovery it seeks to avoid, and because a stay will prejudice Plaintiffs. Dkt. No. 35 at 2, 6–10.

The Court denies Allstate's motion because again, it failed to meet and confer before filing the motion. A party seeking a protective order must include, with the motion, "a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1); *see also* LCR 26(c)(1).

A proper meet and confer "requires a face-to-face meeting or a telephone conference." LCR 26(c)(1); LCR 1(c)(6). But Allstate has not shown that it met and conferred regarding this motion or the underlying discovery dispute. Its certification in the motion is vague and conclusory, Dkt. No. 33 at 1, and its declaration supporting the motion, Dkt. No. 34, says nothing about any attempt to meet and confer. Therefore, the Court denies the motion based on the failure to meet and confer as required. *See, e.g.*, *Lozano v. Does I-X*, No. C22-1477-JLR, 2022 WL 16744880, at *5 (W.D. Wash. Nov. 7, 2022) (denying defendant's motion to stay discovery and for a protective order because she failed to meet and confer with plaintiffs prior to filing it).

Even if Allstate had met and conferred, the Court would still deny its motion on the merits. District courts have discretion to limit discovery "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). "The party seeking to limit discovery has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *Schreib v. Am. Fam. Mut. Ins. Co.*, 304 F.R.D. 282, 284–85 (W.D. Wash. 2014) (quoting *In re Roman Cath. Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011)). The party must also "present a factual showing of a particular and specific need for the protective order." *Pulphus v. Compass Health*, No. 2:21-cv-00930-TL-BAT, 2022 WL 474081, at *3 (W.D. Wash. Feb. 16, 2022) (quoting *Welsh v. City and Cnty. of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995)); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (holding that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (internal quotations omitted) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). Under the liberal discovery principles of the Federal Rules, the party seeking a protective order must "carry a heavy burden of showing why discovery" should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

1    Allstate has not met its burden. It contends that the Goulds' initial disclosures and

2    supplemental initial disclosures were inadequate, so "[i]n the absence of a proper disclosure, this

3    court should conclude plaintiffs have no damages." Dkt. No. 33 at 6. But the Court cannot draw

4    that conclusion when the Goulds claim damages for uncompensated losses plus additional

5    categories of damages to be established by expert testimony. Dkt. No. 19-4 at 4–5.[5] Although a

6    court may "stay discovery when it is convinced that the plaintiff will be unable to state a claim for

7    relief," *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam), the Court is not

8    convinced at this point, based on the limited record, that this is such a case or that the Goulds have

9    no damages.

10    Allstate does not contend that any of the Goulds' specific discovery requests are

11    objectionable; instead, it seeks a comprehensive stay based on its pending and future dispositive

12    motions. Dkt. No. 33 at 2. "Although a court may relieve a party from the burdens of discovery

13    while a dispositive motion is pending, this is the exception and not the rule." *White v. Skagit*

14    *Bonded Collectors, LLC*, No. 2:21-CV-00697-LK, 2022 WL 508825, at *1 (W.D. Wash. Jan. 24,

15    2022). A pending motion to dismiss is generally not grounds for staying discovery. *See Old*

16    *Republic Title, Ltd. v. Kelley*, No. C10-0038-JLR, 2010 WL 4053371, at *4 (W.D. Wash. Oct. 13,

17    2010). "Had the Federal Rules contemplated that a motion to dismiss under Fed[eral] R[ule of]

18    Civ[il] Pro[cedure] 12(b)(6) would stay discovery, the Rules would contain a provision to that

19    effect." *Id.* (quoting *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)); *see also*

20    *Wilmington Tr. Co. v. Boeing Co.*, No. C20-0402-RSM-MAT, 2020 WL 6060434, at *1 (W.D.

21

22

---

23    [5] Allstate also argues that it subpoenaed the files of the Goulds' electrician and contractor, but their responses were inadequate. Allstate cites nothing in support of this contention, and its declaration filed with the motion does not address those issues. Dkt. No. 33 at 5 (contractor failed to respond to the subpoena); Dkt. No. 38 at 4 (electrician's file "doesn't include any signed contract, actual invoices, material expense, time sheets or the electrical permit itself."); Dkt. No. 34 (declaration).

24

1    Wash. Oct. 14, 2020) ("Neither the mere existence of a potentially dispositive motion, nor mere

2    inconvenience and expense suffice to establish good cause for a stay."); *United States v. Bayley*,

3    No. 3:20-CV-05867-DGE, 2022 WL 1289664, at *2 (W.D. Wash. Apr. 29, 2022) ("The Federal

4    Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a

5    potentially dispositive motion is pending." (cleaned up)).

6    　　　　Allstate relies on its pending motion to exclude the Goulds' damages, but as set forth above,

7    the Court denies that motion. And Allstate's aspirations of success on its future motion for

8    summary judgment does not justify a stay. "[S]peculation does not satisfy Rule 26(c)'s good cause

9    requirement." *Rosario v. Starbucks Corp.*, No. 2:16-cv-01951-RAJ, 2017 WL 4122569, at *1

10   (W.D. Wash. Sept. 18, 2017) (internal quotations omitted) (quoting *Gray*, 133 F.R.D. at 40).[6]

11   　　　　Therefore, even if Allstate had met and conferred as required, it is not entitled to a

12   protective order or a stay of discovery.

13   **D.    Allstate Must Produce Witnesses for Depositions and Provide Discovery Answers to Certain of the Goulds' Requests**

14   　　　　In their first motion to compel, the Goulds seek an order compelling Allstate to "designate

15   a witness to testify to the topics included in plaintiffs' Federal Rule Civil Procedure 30(b)(6)

16   deposition notice and provide complete written discovery answers." Dkt. No. 14 at 2. The Goulds

17   allege that Allstate's answers and document production are incomplete and it has refused to

18   produce a witness for a Rule 30(b)(6) deposition. *Id.* at 4–5. Their second motion to compel seeks

19   an order compelling Allstate's claims adjusters to appear for their depositions. Dkt. No. 29 at 2.

20   　　　　1.    <u>The Meet and Confer Requirement</u>

21   　　　　Prior to filing a motion to compel, the moving party must in "good faith confer[] or

22

23

24

---

[6] Because there are ample grounds to deny Allstate's motion to stay discovery, the Court did not consider the Declaration of Thomas Lether, Dkt. No. 36, to which Allstate objects, Dkt. No. 38 at 5–6.

attempt[] to confer with the person or party failing to make disclosure or discovery in an effort to resolve the dispute without court action." LCR 37(a)(1). The requirement entails "a good faith conference in person or by telephone to attempt to resolve the matter in dispute without the court's involvement." LCR 1(c)(6); *see also* LCR 37(a)(1) (requiring a certification and stating that the Court may impose sanctions on a party who "willfully refused to confer [or] failed to confer in good faith"). When parties' good-faith efforts to resolve a discovery dispute fail, a party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1); *see also* Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv) (a party may move for an order compelling production or inspection if the opposing party fails to answer an interrogatory or fails to produce documents).

Both of the Goulds' motions to compel include certifications that the parties met and conferred before the motions were filed. Dkt. No. 14 at 1–2; Dkt. No. 29 at 1. Allstate refused to discuss the substance of the Goulds' discovery requests because it took the position that it was not required to participate in discovery until after the Court ruled on its dispositive motion. Dkt. No. 15 at 2; Dkt. No. 30 at 1. However, requiring the parties to confer again now that the Court has ruled on that motion would further delay the Goulds' discovery efforts and is unnecessary because the parties' briefing addresses the issues. Therefore, the Court addresses the substance of the motions but first notes its displeasure with the parties' lack of communication and cooperation in this case and their minimal meet and confer efforts. In discovery, "[c]ounsel should strive to be cooperative, practical and sensible, and should seek judicial intervention 'only in extraordinary situations that implicate truly significant interests.'" *Neal v. City of Bainbridge Island*, No. 3:20-cv-06025-DGE, 2023 WL 2214245, at *2 (W.D. Wash. Feb. 24, 2023) (quoting *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985)); *see also* LCR 1(c)(6) ("The court expects a high degree of professionalism and collegiality among counsel during any meet and confer conference."). It does not appear that counsel has lived up to those obligations in this case. Their

failure to do so is all the more troubling because this case seems resolvable if only the Goulds were to provide a concrete damages computation with supporting documentation, and both parties conferred with the aim of resolving the case. The Court urges them to do so before expending further resources on discovery and motions.

2.      The Rule 30(b)(6) Deposition

Allstate refused to provide a witness for a Rule 30(b)(6) deposition based on its anticipated dispositive motion. Dkt. No. 15 at 2. Although a future dispositive motion does not excuse Allstate from complying with its discovery obligations, here the Goulds' Rule 30(b)(6) deposition was not "properly noticed" because it did not include "the time . . . of the deposition" as required. *See* Fed. R. Civ. P. 30(b)(1). Instead, the notice was a placeholder with the date and time of the deposition listed as "TBD." Dkt. No. 15-3 at 2. Because the placeholder notice did not comply with the requirements of Rule 30, it did not constitute proper notice of the deposition. Therefore, the Court will not compel Allstate to produce a witness at this time. *See Nevis v. Rideout Mem'l Hosp.*, No. 2:17-CV-02295-JAM-AC, 2019 WL 5596938, at *2 (E.D. Cal. Oct. 30, 2019) (declining to compel depositions because they "were not properly noticed prior to the filing of the motion to compel").

Nevertheless, Allstate cannot hide behind its motions to evade its discovery obligations. Those motions, and Allstate's request to stay discovery, have been denied. Therefore, Allstate must properly meet and confer with the Goulds' counsel to discuss the scope and date for a Rule 30(b)(6) deposition. The parties are *strongly* encouraged to agree—and they should be able to do so in light of the Court's rulings below on the overlapping written discovery requests—but if they cannot agree and find it necessary to file another discovery motion, they must use the joint procedure in Local Civil Rule 37(a)(2).

3.      Discovery Responses

The Goulds seek an order compelling Allstate to provide supplemental responses and

additional documents in response to Plaintiffs' discovery requests. Dkt. No. 14 at 4.[7] Each party

is entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense

and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In evaluating a disputed

discovery request, the Court should consider "the importance of the issues at stake in the action,

the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit." *Id.* Materials need not be

admissible in evidence to be discoverable. *Id.* District courts ultimately retain broad discretion to

permit or deny discovery, *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002), and this broad

discretion encompasses relevancy determinations, *Surfvivor Media, Inc. v. Survivor Prods.*, 406

F.3d 625, 635 (9th Cir. 2005). "The court should and ordinarily does interpret 'relevant' very

broadly to mean matter that is relevant to anything that is or may become an issue in the litigation."

*See Choi v. City of Lakewood*, No. 21-5119-RJB, 2022 WL 670898, at *2 (W.D. Wash. Mar. 7,

2022) (cleaned up).

The Goulds allege that Allstate's document production was deficient in the following ways:

- Allstate failed to produce copies of documents in the policy including sections titled "A guide to your welcome package" and "Insurance Made Simple[.]" (Request for Production #5)

- Allstate failed to produce the underwriting file and documents related to underwriting the Goulds' insurance policy. (RFP #3)

- Allstate failed to produce documents related to its interpretation of relevant portions of the policy[.] (RFP #5)

- Allstate failed to produce any advertising documents concerning the type of insurance policy at issue. (RFP #6)

---

[7] Although the Goulds contend that Allstate's "answers" to their discovery requests were incomplete, Dkt. No. 14 at 4, their motion to compel alleges specific deficiencies only with Allstate's document production, *id.*, so the Court focuses on that issue.

- Allstate failed to produce any personnel files of the people handling the Goulds' insurance claim, excluding sensitive information. Allstate also failed to produce any documents regarding bonuses, compensation, or other incentives given or paid to claim representatives, claim managers, or their supervisors or for which claims-handlers and their supervisors are eligible. (RFP #8, 23)

- Allstate failed to produce all communications relating to the claim that may not have been placed in the "claim file." (RFP #10)

- Allstate failed to produce any standards that have been adopted and/or implemented for the investigation and handling of first-party homeowners insurance claims. (RFP #6, 7)

- Allstate failed to produce any manuals, procedures, protocols, trainings, and all other documents relating to the practices that applied to Washington homeowners insurance claims. (RFP #8)

- Allstate failed to provide any copies of the initiating documents for lawsuits against it alleging bad faith in first-party insurance claims in the State of Washington during the relevant period. (RFP #22)

- Allstate failed to provide any metrics and/or studies in the used [sic] for evaluating the profitability or financial status of the claims department. (RFP #24)

Dkt. No. 14 at 4. In response to the motion, Allstate disputes that it is required to supplement its responses to some of the discovery requests. Dkt. No. 20 at 5–6 (objecting to supplementing its responses to RFPs 1, 5–8, 22–23).[8]

Because Allstate does not object to supplementing its responses to RFP 3 (the underwriting file), 10 (communications regarding the claim that are not in the claim file), or 24 (financial information), *see generally id.*, the Court will compel it to do so.

The Goulds have not included any arguments about why the information sought in one of the two[9] RFPs numbered "6" (regarding advertising) is relevant or why the Court should compel

---

[8] The Court does not further address RFP No. 1 because the Goulds did not move to compel a further response to it.

[9] Confusingly, the Goulds' RFPs contain two requests for production numbered 5, 6, and 8. Dkt. No. 15-1 at 5, 7, 10–12. The Court therefore focuses on the substantive categories of each request.

its production other than their conclusory statement that "it is well-settled that courts may look to the . . . marketing history of insurance provisions[.]" Dkt. No. 22 at 6.[10] The Court denies their motion to compel on that issue. The Court addresses the other RFPs in turn.

a.     Policy Sections and Drafting Materials (RFP 5)

The Goulds contend that Allstate failed to produce copies of documents in the policy including sections titled "A guide to your welcome package" and "Insurance Made Simple." Dkt. No. 14 at 4. Allstate does not object to providing those documents or claim that they are irrelevant, so if Allstate has not produced the documents already, the Court compels it to do so.

The Goulds also contend that Allstate failed to produce documents related to its drafting and interpretation of specified portions of the policy. *Id.* RFP 5 seeks, for specified provisions in the policy, "all documents relating to the drafting, intention, interpretation, and application of the provision to claims made by policyholders[.]" Dkt. No. 15-1 at 5. The Goulds' two-sentence conclusory argument avers that other courts have allowed discovery of such information. Dkt. No. 22 at 6–7 (citing *Lains v. Am. Fam. Mut. Ins. Co.*, No. C14-1982-JCC, 2015 U.S. Dist. LEXIS 180659, at *8 (W.D. Wash. July 7, 2015) (finding, for purposes of a Rule 30(b)(6) deposition, that "the drafting history and interpretation of coverages may be relevant in assessing how the insurance provisions at issue were applied."), and *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co.*, 882 P.2d 703, 721 (Wash. 1994) ("A number of courts have examined the drafting and marketing history of the qualified pollution exclusion in interpreting the clause.")). Allstate responds that documents regarding its drafting and interpretation of the policy are not relevant because interpretation of the policy is a question of law for the Court to determine. Dkt. No. 20 at 5 (citing

---

[10] In fact, the Goulds do not even attempt to explain the relevance and proportionality of any of the information they seek until their reply brief. *Compare* Dkt. No. 14, *with* Dkt. No. 22. This is procedurally improper because "[s]ubmitting the bulk of one's legal argument and evidence only in reply deprives the opposing party of a fair opportunity to respond[.]" *See Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 1005 (C.D. Cal. 2002).

*Allstate Ins. Co. v. Bowen*, 91 P. 3d 897, 900 (Wash. Ct. App. 2004), and *McDonald v. State Farm Fire & Cas. Co.*, 837 P. 2d. 1000, 1003 (Wash. 1992)).

The Goulds have not shown that the documents they request are relevant in this case. "In Washington, insurance policies are construed as contracts," and "[w]here policy language remains clear and unambiguous, the Court will enforce the provisions as written and not modify the policy or create ambiguity where none exists." *Cervantes v. Foremost Ins. Co.*, No. 1:15-CV-03172-SMJ, 2016 WL 7972905, at *2 (E.D. Wash. Apr. 19, 2016). Courts may consider extrinsic evidence, including statements of the insurer in drafting, statements to insurance regulators, and other industry statements "insofar as they represent a reasonable construction of the ambiguous policy language." *Queen City Farms, Inc*, 882 P.2d at 721–22; *see also id.* at 722–23 ("[W]hen the issue is how to interpret an ambiguous policy provision, if the interpretation proposed by the insured came from the mouth of the drafter of the provision, ordinarily this would be some evidence that the proposed interpretation is reasonable." (quoting K. Abraham, *Env't Liab. Ins. Law* 38–39 (1991))). But here, the Goulds do not argue that the relevant policy provisions are ambiguous. Therefore, because it appears at this point that the policy will be interpreted as a matter of law, unaided by extrinsic evidence, the Goulds have not shown that the requested documents are relevant and this request to compel is denied.

  b.  *Guidelines, Manuals, Procedures (RFPs 6–8)*

The Goulds seek additional documents in response to the following RFPs:

- RFP 6: Produce all standards that have been adopted and/or implemented for the investigation and handling of first party homeowners insurance claims such as the SUBJECT CLAIM made by the plaintiff that have been in effect at any time during the RELEVANT PERIOD.

- RFP 7: Produce all standards that have been adopted and/or implemented that you contend apply to the handling of first party homeowners insurance claims such as the SUBJECT CLAIM during the RELEVANT PERIOD.

- RFP 8: Produce all records, manuals, procedures, protocols, trainings, and all other documents in effect during the RELEVANT PERIOD relating to the practices that applied to Washington homeowners insurance claims with your company generally—including standards that applied to first-party claims generally that also applied to homeowners insurance claims.

Dkt. No. 15-1 at 11–12. Allstate objects to these requests because some documents that could come within their scope are clearly irrelevant, e.g., a laptop owner's manual. Dkt. No. 20 at 6. The Goulds clarify that these requests relate only to claims handling documents. Dkt. No. 22 at 5. Allstate also argues that the documents are irrelevant because resolution of the Goulds' claims will turn on whether Allstate violated "Washington statutes and administrative code pr[o]vision[s], not whether Allstate has a manual." Dkt. No. 20 at 6.

However, training materials are relevant to whether Allstate complied with its obligation to conduct a reasonable investigation. *See, e.g.*, *Hover v. State Farm Mut. Auto. Ins. Co.*, No. CV-13-05113-SMJ, 2014 WL 4239655, at *4 (E.D. Wash. Aug. 26, 2014) ("The requested training materials, which ostensibly instructed the claims adjuster on how to handle the type of claim that Plaintiff submitted, are plainly relevant to establishing that the claims adjuster failed to conduct a reasonable investigation."). From those training materials—and from Allstate's manuals, procedures, and protocols for handling first-party homeowners claims—the Goulds may be able to discern whether those procedures were adequate, whether employees departed from that guidance in handling their claim, and "whether systemic defects exist in Defendant's handling of these types of claims and injuries in general." *Id.*; *see also Bagley v. Travelers Home & Marine Ins. Co.*, No. C16-0706-JCC, 2016 WL 4494463, at *5 (W.D. Wash. Aug. 25, 2016) (holding that "[b]ecause Plaintiffs allege insurance bad faith, Defendant's materials and manuals on property insurance and claim handling in general are relevant to this suit" and "may well shed light on how Defendant instructs its adjustors to investigate, evaluate, and process a claim like Plaintiffs'."). Therefore, those materials are relevant.

Because the requested information is relevant, Allstate "has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Cunningham v. Bank One*, No. C05-2104-RSM, 2006 WL 3361773, at *1 (W.D. Wash. Nov. 20, 2006). Allstate's conclusory response fails to carry that burden. Dkt. No. 20 at 6. Therefore, the Court grants the Goulds' motion to compel regarding these requests.

c.      *Personnel Files (RFP 8)*

RFP 8 seeks "the personnel file for each person who played any role in the handling" of the Goulds' claim. Dkt. No. 15-1 at 7. Allstate argues that the information is not relevant and that the request is overbroad (potentially including "the mail handler, administrative staff, etc.") and disproportionate to the needs of the case. Dkt. No. 20 at 5–6. The Goulds respond that they are seeking only the personnel files "from the adjusters, supervisors, and any other staff involved in handling the Goulds' claim." Dkt. No. 22 at 7. They note that other courts in insurance disputes have compelled production of "reviews, disciplinary records, and compensation information[.]" *Id.* (citing *Bagley*, 2016 WL 4494463, at *6). But even if this conclusory assertion were sufficient (it is not), the Goulds saved it for their reply brief. They make no attempt to explain the relevance or proportionality of the request in their motion. For example, although they seek the employees' entire personnel files, Dkt. No. 15-1 at 7, they provide no argument about why employees' reviews and disciplinary records, untethered to the handling of their claim—or any claim—are relevant. *Cf. Schreib*, 304 F.R.D. at 289 (compelling Rule 30(b)(6) testimony regarding the insurer's handling of the plaintiff's claim and the insurer's "critiques or evaluations thereof").[11] In the absence of any argument about relevance, this broad request seems "more likely to lead to embarrassment and undue burden or expense for Defendant and its employees." *Perez v. Am. Fam.*

---

[11] In an earlier unpublished order in *Schreib*, the Court granted a protective order shielding employee personnel files from discovery. No. C14-0165-JLR, Dkt. No. 41 at 9–10 (W.D. Wash. Oct. 14, 2014).

1  *Ins. Co.*, No. C20-849-RSM, 2021 WL 928180, at *2 (W.D. Wash. Mar. 11, 2021) (granting

2  protective order regarding personnel files). Therefore, the Court will not compel the production of

3  the employees' personnel files.

4       d.       *"Initiating Documents" (RFP 22)*

5       RFP 22 seeks production "of the initiating documents for all lawsuits against you alleging

6  bad faith in first-party insurance claims in the State of Washington" during the relevant period.

7  Dkt. No. 15-1 at 13.[12] Once again, the Goulds make no attempt to explain the relevance or

8  proportionality of this request in their motion. Allstate argues that the term "initiating documents"

9  is vague and undefined, and that the documents appear irrelevant. Dkt. No. 20 at 6. The Goulds

10  counter that "complaints against an insurer, particularly where they are widespread, will lead to

11  evidence to support" a CPA claim. Dkt. No. 22 at 6. Once again, a reply brief is not the place to

12  first introduce legal and factual support for a motion. The Court declines to compel a further

13  response.

14       4.       Fact Witness Depositions

15       In their second motion to compel, the Goulds seek an order compelling Allstate "to produce

16  its claim adjuster fact witnesses for their depositions." Dkt. No. 29 at 2. Allstate responds without

17  any argument and simply incorporates by reference its prior briefing and declarations from the

18  three other motions addressed in this order. Dkt. No. 39 at 1–2. Allowing such incorporation would

19  circumvent the length limit in Local Civil Rule 7(e)(4), so the Court does not consider the

20  arguments in Allstate's separate filings in evaluating the Goulds' second motion to compel. *See*

21  *Mooney v. Roller Bearing Co. of Am., Inc.*, No. C20-01030-LK, 2022 WL 1014904, at *10 (W.D.

22  Wash. Apr. 5, 2022) (declining to consider other filings incorporated by reference when doing so

23  ────────────────

24  [12] The Goulds have not provided a definition of the "relevant period," *see generally* Dkt. No. 15-1, but neither party suggests an issue with the temporal scope of the requests.

1    would violate the length limit in the Local Civil Rules); *O'Dell v. Conseco Senior Health Ins. Co.*,

2    No. C08-00793-RSL, 2011 WL 13044240, at *1 n.1 (W.D. Wash. Feb. 10, 2011) (disregarding all

3    arguments and supporting evidence that were not made in defendants' opposition to plaintiff's

4    motion). And in light of the Court's denial of Allstate's motions to exclude damages, to stay

5    discovery, and for a protective order, there is no basis to deny the Goulds' motion. Therefore, the

6    Court grants the Goulds' motion to compel Allstate's fact witnesses to attend their depositions.

7    **E.    Requests for Attorney's Fees**

8        The Goulds argue that they are entitled to their fees in bringing both motions to compel

9    because Allstate has "unilaterally ignore[d] its discovery obligations" by refusing to respond fully

10   to the Goulds' requests for production and not making a Rule 30(b)(6) witness or its claims

11   handlers available for depositions. Dkt. No. 14 at 7; *see also id.* at 2; Dkt. No. 29 at 7.

12       Where, as here, the Court grants a motion to compel, it "must, after giving an opportunity

13   to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney

14   advising that conduct, or both to pay the movant's reasonable expenses incurred in making the

15   motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The Court will not order such fees

16   if the movant failed to make a good faith attempt to obtain the discovery without court action, the

17   opposing party's nondisclosure was substantially justified, or other circumstances make an award

18   unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). In other words, Rule 37 "creates a presumption that the

19   losing party will pay the attorney fees which the prevailing party incurred in bringing the motion."

20   *Ryness Co. v. Builder Sales Grp., LLC*, No. C10-1096-JCC, 2011 WL 2532691, at *1 (W.D. Wash.

21   June 24, 2011). The non-disclosing party has the burden of showing that the failure to disclose was

22   substantially justified or that other circumstances make an award unjust. *See Hyde & Drath v.*

23   *Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

24

1          1.      <u>Fees for Refusing to Attend Fact Witness Depositions</u>

Allstate has failed to meet its burden of showing that the Goulds brought their second motion to compel without conferring in good faith, that its failure to produce the deponents was substantially justified, or that other circumstances make an award unjust. *See Cherry v. Prudential Ins. Co.*, No. C21-27-MJP, 2021 WL 5205614, at *3 (W.D. Wash. Nov. 9, 2021). Nonproduction is substantially justified only when there is a "genuine dispute" as to whether the information at issue is discoverable. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Here, there was no genuine dispute. When Allstate refused to provide witnesses for their depositions, it offered two reasons: the Goulds "unilaterally" scheduled the depositions, and Allstate had a pending motion to exclude the Goulds' damages that could render fact discovery unnecessary. Dkt. No. 31-1 at 2. Although counsel in this district generally follow the collegial practice of conferring to set depositions on mutually agreeable dates, they are not required to do so. Rule 30 requires a party to provide "reasonable written notice" of the deposition, Fed. R. Civ. P. 30(b)(1), and the Goulds did so by providing their notices nearly a month in advance, Dkt. No. 31-2 at 2; *Charm Floral*, 2012 WL 424581, at *2 (explaining that "[w]hat constitutes reasonable notice depends on the circumstances of each case," but "more than one week's notice generally is considered reasonable.").

Nor did Allstate's pending motion to exclude damages serve as a basis to refuse to attend the depositions. Allstate did not file a motion for a protective order before the scheduled depositions. Unless deponents have "obtained a court order that postpones or dispenses with [their] duty to appear, that duty remains." *Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964) ("Under the Rules, it is for the court, not the deponent or his counsel, to relieve him of the duty to appear."); *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 336 (D. Nev. 2016) (explaining that a deponent's "duty to appear at a deposition

1    . . . is relieved only by obtaining either a protective order or an order staying the deposition pending

2    resolution of the motion for protective order."). Allowing a party to unilaterally delay discovery

3    simply by filing an unacted-upon motion "would be an intolerable clog upon the discovery

4    process." *Pioche Mines Consol., Inc.*, 333 F.2d at 269.

5            This case does not present the kind of circumstances that might otherwise make an award

6    of expenses unjust. *See, e.g.*, *Sinclair v. Home Depot, U.S.A., Inc.*, No. C19-1971-JCC, 2020 WL

7    5653322, at *2 (W.D. Wash. Sept. 23, 2020) (award of expenses was unjust because the discovery

8    dispute "arose at the height of the COVID-19 pandemic"); *Ville v. Fam. Res. Home Care*, No.

9    C17-0606-RSM, 2018 WL 994140, at *1 (W.D. Wash. Feb. 21, 2018) (award of expenses was

10   unjust where non-movant had difficulty communicating with her out-of-state counsel, eventually

11   proceeded pro se, was unemployed, and did not understand the posture of the case before the

12   motion was filed). To the contrary, Allstate refused to substantively meet and confer about the

13   discovery issues even though the law is clear that filing a dispositive motion does not automatically

14   stay a party's discovery obligations. *See, e.g.*, *Wilmington Tr. Co.*, 2020 WL 6060434, at *1.

15   Allstate's late notice that its fact witnesses would not attend their depositions—given on a holiday

16   just one day before the first deposition was scheduled to proceed—deprived the parties of an

17   opportunity to attempt to resolve the issue in a timely and cooperative manner. It also resulted in

18   the Goulds incurring a $250 fee from the court reporter for the late cancellation of the deposition

19   scheduled for February 21, 2023. Dkt. No. 41 at 1; Dkt. No. 41-1 at 2.

20           Allstate's position was not substantially justified and resulted in unnecessary motion

21   practice and a waste of judicial resources. The Court awards the Goulds their reasonable expenses,

22   including the late cancellation charge and attorney's fees, incurred in bringing their second motion

23   to compel. Dkt. No. 29.

24

2.      Fees Regarding the First Motion to Compel

Allstate has not shown that its refusal to provide more complete responses to RFPs 3, 5–8, 10, and 24 was substantially justified. However, it is unacceptable that the Goulds saved their substantive arguments regarding the proportionality and relevance of their requests for their reply brief. This deprived Allstate of the ability to meaningfully respond to the Goulds' arguments. That the motion lacks such key explication also suggests that it was indeed the product of a rushed attempt to be "first to file" before Allstate could submit a motion to the Court. *See* Dkt. No. 20 at 3. The Court accordingly finds that it would be unjust under these circumstances to impose fees. *See, e.g.*, *Miller v. Sawant*, No. C18-506-MJP, 2023 WL 34593, at *3 (W.D. Wash. Jan. 4, 2023) (declining to award fees to either party when both parties "failed to follow not just the letter, but also the spirit of the Civil Rules").

**F.      Request for Sanctions**

In their second motion to compel, the Goulds seek sanctions against Allstate based on its last-minute refusal to produce its claims adjusters for their depositions. Dkt. No. 29 at 7–8. They seek an award of $25,000 to "offset the excess costs caused by [Allstate's] discovery violations, to punish unacceptable behavior, and as a deterrent for future bad conduct." *Id.* at 8 (cleaned up). Allstate did not respond to the request for sanctions and instead referred the Court generally to its previous filings. *See generally* Dkt. Nos. 39. As set forth above, the Court declines to consider those referenced filings as a response because doing so would allow Allstate to circumvent the page limit in the Local Civil Rules. Allstate also asked for terms to be awarded to it. *Id.* at 2; Dkt. No. 39-1 at 2.

District courts have "the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Sanctions issued under a court's inherent power against a party or a party's attorney "are

available if the court specifically finds bad faith or conduct tantamount to bad faith." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002) (internal quotations omitted) (quoting *Fink*, 239 F.3d at 994). Bad faith is demonstrated by "delaying or disrupting the litigation or hampering enforcement of a court order." *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978). Conduct "tantamount to bad faith" includes "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994. "A court may fine a party or an attorney in order to, among other things, 'offset the excess costs caused by [the party's] discovery violations, to punish unacceptable behavior, and as a deterrent to future bad conduct.'" *Knickerbocker v. Corinthian Colls.*, 298 F.R.D. 670, 682 (W.D. Wash. 2014) (alteration original) (quoting *E.E.O.C. v. Fry's Elecs., Inc.*, 287 F.R.D. 655, 660 (W.D. Wash. 2012) (bracketing in *Knickerbocker*). "In the Ninth Circuit, the standard of proof required for sanctions has never been precisely defined, but clear and convincing evidence seems to suffice." *Gardner v. Wells Fargo Bank, NA*, No. 2:19-CV-0207-TOR, 2021 WL 2125530, at *1 (E.D. Wash. Apr. 14, 2021); *see also Knickerbocker*, 298 F.R.D. at 677 (same).

The Court finds sanctions unwarranted here. Allstate is not entitled to fees or sanctions because it has not prevailed on any of its motions. And although Allstate violated its discovery obligations, the Goulds are likewise not entitled to sanctions. Their own failure to provide timely and complete initial disclosures or a complete supplement thereto have contributed to the delay and waste of judicial resources in this case. *See, e.g., Embotelladora Electropura S.A. de C.V. v. Accutek Packaging Equip. Co., Inc.*, 3:16-cv-00724-GPC-RNB, 2018 WL 3303002, at *10 (S.D. Cal. July 5, 2018) ("While it is clear that Plaintiff violated its discovery duties in this case, Defendant's counsel's missteps have also contributed to the current situation."). The Court has already awarded the Goulds some of their fees and expenses, which should suffice to offset their excess costs and deter Allstate. Therefore, the Court declines to award sanctions to either side.

### III.        CONCLUSION

For the reasons stated herein, the Court hereby ORDERS:

(1) the Order to Show Cause, Dkt. No. 48, is DISCHARGED;

(2) the Goulds' motion to compel a Rule 30(b)(6) deposition and discovery responses, Dkt.
No. 14, is GRANTED IN PART AND DENIED IN PART;

(3) Allstate's motion to exclude evidence regarding damages, Dkt. No. 18, is DENIED;

(4) the Goulds' motion to compel the depositions of fact witnesses, Dkt. No. 29, is
GRANTED; and

(5) Allstate's motion for a protective order and to stay Plaintiffs' discovery, Dkt. No. 33,
is DENIED.

Dated this 20th day of April, 2023.

Lauren King
United States District Judge